OPINION OF THE COURT
FUENTES, Circuit Judge:
Brandow Chrysler Jeep Co. et al. (collectively “Brandow”) appeal from the District Court’s grant of summary judgment in favor of DataScan Technology. Brandow argues that the District Court erred when it considered extrinsic evidence in order to interpret the terms of a release it relied upon in granting summary judgment. Brandow further contends that the District Court improperly concluded that no reasonable juror could make a finding of gross negligence on the part of DataScan. DataScan, in its Cross-Appeal, states that the District Court improperly denied as moot its motion for sanctions. Substantially for the reasons articulated in the District Court’s opinion, as well as those stated below, we will affirm.[1]

*845
I. Facts and Procedural History

Because we write primarily for the parties, we only discuss the facts and proceedings to the extent necessary for resolution of this case. Brandow has received floor plan financing from PNC Bank for approximately thirty years. This system requires an automobile dealer to maintain a certain level of inventory and to account for the vehicles that secure the credit line. Starting in 1994, PNC required monthly floor plan audits of Brandow and used its own personnel to conduct these audits. In 2001, DataScan began to conduct these audits on behalf of PNC.
In approximately August 2004, PNC and Brandow entered negotiations after it was discovered that Brandow’s vehicle inventory was in an “out of trust” position. These negotiations resulted in the extension of additional loans to Brandow in return for personal guarantees from Brandow’s principals as well as a release of PNC (“Release”). Plaintiffs signed the Release on November 15, 2004, releasing PNC, as well as its consultants and agents, from “all manner of claims ... whether known or unknown and whether based on facts now known or unknown ... from the beginning of the world to the date of this Release.” However, the Release only protected PNC’s agents and consultants if PNC is or may be hable on a claim for indemnification, contribution, or otherwise.
DataScan provided services to PNC pursuant to an Audit Agreement (“Agreement”) entered into on April 28, 1998. According to the Agreement, DataScan “provides on-site automated floorplan inventory auditing services ... for banks and financial institutions.” Under the Agreement’s terms, PNC indemnified DataScan for any “loss, damages, or expenses ... incurred or suffered by [DataScan] for any services rendered by [DataScan] in accordance with the terms and conditions of this Agreement, which claim does not result from the gross negligence or willful misconduct of [DataScan] ... at the time of Audit, to record the appropriate status of any Inventory on a File provided pursuant to the terms of this Agreement.” The Agreement also absolved DataScan of any liability to PNC for any misinformation provided to DataScan by PNC’s customers.
Brandow’s state court complaint was removed to the District Court on November 17, 2006. The complaint alleged that DataScan’s audits failed to comply with industry standards and that DataScan did not share with Brandow information it was required to share, resulting in losses of approximately $20 million. It included claims for breach of contract (as a third-party beneficiary), professional negligence, breach of fiduciary duty, and negligent representation. On June 13, 2007, the District Court granted a motion to dismiss the breach of contract and professional negligence claims. Upon a motion for reconsideration, the District Court dismissed the breach of fiduciary duty claim on October 2, 2007.
Brandow filed an amended complaint on October 29, 2007. DataScan responded ■with a motion to dismiss the remaining claims in the amended complaint, for negligent misrepresentation, breach of fiduciary duty, and intentional misrepresentation. While this motion was pending, DataScan filed a motion for summary judgment, arguing that it was an agent or consultant of PNC and accordingly included within the terms of the Release.
In ruling on the motion for summary judgment, the District Court, relying on the terms of the Agreement signed by DataScan and PNC in 1998, determined that DataScan was a “consultant” as that term is generally understood and was therefore covered by the Release. However, the District Court noted that if DataS *846 can was either grossly negligent or engaged in willful misconduct, the Release would be inapplicable. The District Court found that DataScan was neither grossly negligent nor guilty of willful misconduct, and granted DataScan’s motion on the claims of breach of fiduciary duty and negligent misrepresentation.[2]
Brandow filed a Notice of Appeal on October 17, 2008, appealing the grant of summary judgment, based on the Release, on the breach of fiduciary duty and negligent misrepresentation claims, as well as the grant of the motion to dismiss with prejudice Plaintiffs’ intentional misrepresentation claim and the grant of the motion to dismiss Plaintiffs’ breach of contract claim. However, in its brief in this appeal, Brandow only requests that the grant of summary judgment be reversed and offers no arguments related to the intentional misrepresentation or breach of contract claims. Instead its arguments focus solely on the applicability of the Release to DataScan, which was the basis for the District Court’s grant of summary judgment on the breach of fiduciary duty and negligent misrepresentation claims.[3]

II. Discussion

Under Pennsylvania law, “[i]n cases of a written contract, the intent of the parties is the writing itself.” Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 588 Pa. 470, 905 A.2d 462, 468 (2006) (citation omitted). Absent ambiguity, the court should not look beyond the writing to determine the parties’ intentions. The District Court’s determination of the meaning of the term “consultant” did not rely upon extrinsic evidence, but instead followed standard principles of contract interpretation, relying upon common usage as reflected in a standard dictionary. It derived its definition of “consultant” from a decision of this Court: “one ‘who gives professional advice or services in the field of his special knowledge or training....’” Montgomery County v. Microvote Corp., 175 F.3d 296, 302 (3d Cir.1999) (citing Webster’s Third Neiv Int’l Dictionary of the English Language, Unabridged, 490 (1966)).
The District Court consulted the Agreement not to interpret the term consultant, but rather to identify the nature of DataScan’s work on behalf of PNC and whether it fit within this standard definition. DataScan’s work on behalf of PNC entailed the use of specialized knowledge, training and tools to conduct floor plan audits of Brandow’s inventory on behalf of PNC. These activities, the District Court properly concluded, “constitute the rendering of professional services in the field of special knowledge or training.” Brandow Chrysler Jeep Co. v. Datascan Techs., Civ. A. No. 06-5093, 2008 WL 4274494, at *3 (E.D.Pa. Sept.17, 2008). Accordingly, we find the District Court did not err in its use of the Agreement.
With regards to the issue of DataScan’s alleged gross negligence, when the question of whether particular conduct constitutes negligence, gross negligence, or recklessness is one that reasonable persons may disagree about, the question should be decided by a jury. Pichler v. UNITE, 542 F.3d 380, 390 (3d Cir.2008) (citation omitted). This case does not, however, present any basis for reasonable disagreement. The actions described in the affidavit of Margaret Stuski and depo *847 sition testimony of Elizabeth Skinner do not constitute gross negligence. We also note that Brandow has failed to establish the specific duty owed by DataScan, so as to allow for a finding of a deviation, flagrant or otherwise, from the standard of care.
The evidence of misconduct presented by Brandow included that auditors failed to inspect vehicle titles and deal jackets and failed to confirm the locations of vehicles and note damage to vehicles, but instead relied almost exclusively on the representations of Brandow and its agents. Such behavior does not constitute gross negligence — “conduct that is ‘flagrant, grossly deviating from the ordinary standard of care,’ ” Benn v. Univ. Health Syst., Inc., 371 F.3d 165, 175-76 (3d Cir.2004)— particularly given that the terms of DataScan’s contract with PNC expressly allowed it to rely upon representations made by Brandow and shielded it from liability for doing so. Accordingly, we find the District Court did not err in its determination of this issue.
We have considered the other issues raised by DataScan and find they merit no further discussion.
For the foregoing reasons, we will affirm the District Court in all respects.

. The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

. In the same memorandum and order, the District Court granted DataScan's motion to dismiss the intentional misrepresentation claim for failure to state a claim and denied all remaining motions as moot.

. We exercise plenary review over a district court's summary judgment ruling. Township of Piscataway v. Duke Energy, 488 F.3d 203, 208 (3d Cir.2007).