J-A13022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| REAL ESTATE MANAGEMENT ADVISORS, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1103 EDA 2021 |
| UNITED STATES LIABILITY INSURANCE COMPANY | : | |

Appeal from the Order Entered May 24, 2021
In the Court of Common Pleas of Montgomery County Civil Division at No(s):
2019-03893

BEFORE:  OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                        **FILED JULY 19, 2022**

Appellant, Real Estate Management Advisors, LLC ("REMA"), appeals from the May 24, 2021 Order, entered in the Montgomery County Court of Common Pleas denying REMA's motion for summary judgment and granting summary judgment in favor of Appellee, United States Liability Insurance Company ("USLI"), in this insurance coverage dispute.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  REMA is a real estate management firm which, among other things, collects and holds deposits and rents in escrow for the benefit of its clients.  REMA learned in 2018 that one of its then-employees had misappropriated more than $366,000 from its clients' escrow accounts.  REMA deposited its own funds

into the client escrow accounts to cover the losses caused by the employee's misappropriation.[1]

At the time of the misappropriation, REMA had an errors and omissions insurance policy ("Policy") issued by USLI.[2]  The Policy provided that USLI:

> will pay on behalf of the Insured Loss in excess of the deductible not exceeding the Limit of Liability to which this coverage applies **that the Insured shall become legally obligated to pay because of Claims first made against the Insured** during the policy period or, if applicable, during any Extension Period, for Wrongful Acts of the Insured arising solely out of an Insured's duties on behalf of the Named Insureds.

Coverage Part A Property Managers Errors and Omissions Policy, 5/16/14, at (I)(A) (emphasis added) (hereinafter "Policy").

The Policy defines a "claim" as:

(1)    a demand for money as compensation for a Wrongful Act; or

(2)    any judicial or administrative proceeding initiated against any Insured seeking to hold such Insured responsible for a Wrongful Act, including any appeal therefrom.

*Id.*

On October 24, 2018, REMA submitted a claim under the Policy to USLI seeking reimbursement for the loss of the misappropriated funds.

_____

[1] REMA received $25,000 in partial compensation for the loss under a business coverage policy issued by a non-party insurance company.  REMA's former employee has not returned any of the misappropriated funds.

[2] REMA maintained the Policy's coverage through the relevant period.  The parties do not dispute that REMA's former employee misappropriated REMA's clients' funds during the policy period.

On October 26, 2018, USLI denied coverage explaining, *inter alia*, that "[t]he Policy is a third party liability coverage that only provides coverage for claims brought **against** an insured." Denial of Coverage Letter, 10/26/18, at 2 (emphasis in original). It further explained that, because no third party had asserted a claim against REMA, USLI had no obligation under the Policy to pay REMA funds simply to avoid a future claim by a third party.

Following receipt of the denial of coverage letter, on February 28, 2019, REMA filed a Complaint in Declaratory Judgment seeking a determination that USLI owed it coverage under the Policy.[3] USLI filed an Answer with New Matter, to which REMA filed an Answer.

On January 22, 2021, REMA filed a Motion for Summary Judgment asserting that it was entitled to judgment as a matter of law on its claim for declaratory relief. In particular, it argued that because its own errors, omissions, and negligent supervision of its former employee were the direct cause of its loss, its loss was compensable under the policy.

On April 9, 2021, USLI filed an answer to REMA's motion for summary judgment and a cross-motion for summary judgment. USLI argued, *inter alia*, that because none of REMA's clients had made any "claim" for repayment of the misappropriated funds REMA had not become legally

---

[3] REMA also pleaded a claim of breach of contract. With leave of court, on July 17, 2020, REMA filed an amended complaint in which it added one count each of common law indemnity and unjust enrichment.

obligated to its clients for repayment. Thus, USLI concluded that its duty to insure REMA under the Policy had not been triggered. USLI further concluded that, because coverage under the policy had not been triggered, it was entitled to judgment as a matter of law.[4]

On May 24, 2021, the trial court entered an Order denying REMA's motion for summary judgment, granting USLI's cross-motion for summary judgment, and dismissing REMA's complaint. The court explained that it entered summary judgment in favor of USLI because "no 'claim' as that term is defined in the [Policy] ha[d] been made against [REMA] for the misappropriated funds [and a]s such [USLI's] duty to provide coverage ha[d] not been triggered." Trial Ct. Op., 7/21/21, at 6.

This appeal followed. Both REMA and the trial court have complied with Pa.R.A.P. 1925.

REMA raises the following issue on appeal:

> Whether the [t]rial [c]ourt abused its discretion and/or committed an error of law in granting summary judgment to [USLI] and denying summary judgment to [REMA] where [USLI's] duty to insure [REMA] was triggered by the negligent supervision of the employees of [REMA] and where the claimed error and omission of the corporate insured [REMA] was confused with the action of its employee?

REMA's Brief at 4.

**Standard of Review**

_____

[4] On May 10, 2021, REMA filed an answer to USLI's cross-motion for summary judgment.

- 4 -

REMA challenges the trial court's Order granting summary judgment in favor of USLI. Our Supreme Court has clarified our role as the appellate court as follows:

> On appellate review [ ], an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But[,] the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (citations and quotation omitted).

A trial court may grant summary judgment "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Id.*** (citation omitted); ***see also*** Pa.R.C.P. 1035.2(1). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." ***Summers***, 997 A.2d at 1159. "In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." ***Id.*** (citation and internal quotation marks omitted).

The instant dispute involves the interpretation of the Policy issued by USLI. Because contract interpretation is a question of law, our standard of

review is *de novo*, and the scope of review is plenary. ***Ragnar Benson Inc. v. Hempfield Twp. Mun. Auth.***, 916 A.2d 1183, 1188 (Pa. Super. 2007).

Our Supreme Court has set forth the principles governing contract interpretation as follows:

> The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself. Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

***Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.***, 905 A.2d 462, 468-69 (Pa. 2006) (citations omitted).

## Analysis

REMA asserts that the trial court erred in interpreting the Policy to conclude that the USLI did not owe a duty under the Policy to provide coverage. In particular, REMA argues that it had a valid claim under the Policy "as soon as [REMA] became aware that client funds had been misappropriated, which discovery occurred during the Policy period[]" because that is when it became "legally obligated to its clients for repayment of the misappropriated funds[.]" REMA's Brief at 10. According to REMA,

this "legal obligation" to repay its clients formed the basis of its asserted claim under the Policy.[5]  We disagree.

As stated above, the Policy provides coverage if "the Insured shall become legally obligated to pay because of Claims first made against the Insured[.]"  Policy at (I)(A).  Thus, pursuant to the plain language of the Policy, in order to trigger a coverage obligation, the Policy requires that a third-party assert a claim against REMA, which REMA is legally obligated to pay.  In other words, the Policy provides third-party benefits and not first-party benefits.  Because no third-party had asserted a claim against REMA and REMA had not become legally obligated to pay any third-party, USLI had no duty to REMA under the Policy.

Having found that USLI had no coverage duty under the Policy, no genuine issue of material fact existed as to the allegations in REMA's

_____

[5] REMA's suggestion in its Brief that the trial court's decision to grant summary judgment in USLI's favor was the result of the court's having "confuse[d] the claimed error and omission of [REMA] with that of its employee," *see* REMA's Brief at 11, is belied by the record.  The record reflects that the court concluded simply that USLI owed no duty to REMA because no third-party claim had been made against REMA as required to trigger coverage and that the Policy did not provide first-party coverage to REMA.  *See* Trial Ct. Op. at 6-7.  Furthermore, the court noted that, even if the Policy did provide first-party coverage, it would have granted summary judgment in favor of USLI because REMA had "not produced as part of the summary judgment record any evidence demonstrating how [its former employee's] misappropriation resulted from [REMA's own] alleged negligence."  *Id.* at 6 n.4.

complaint. Accordingly, the trial court properly entered judgment as a matter of law in favor of USLI. REMA is, thus, not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2022