J-A16036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW 2535 PROPERTIES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD E. DENITHORNE AND | : | |
| PRISCILLA F. DENITHORNE | : | |
| | : | No. 285 EDA 2022 |
| Appellants | : | |

Appeal from the Judgment Entered March 4, 2022
In the Court of Common Pleas of Carbon County Civil Division at No(s):
18-1411

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

DISSENTING MEMORANDUM BY PELLEGRINI, J.: **FILED JANUARY 26, 2023**

Because the majority, in reversing the trial court, has engaged in impermissible fact finding, and that fact finding is not supported by competent evidence and is at variance with the words of the provision at issue and has reversed the trial court's remedy based on a misapprehension of law and facts, I respectfully dissent.

On January 13, 2018, Richard E. Denithorne and Priscilla F. Denithorne (Sellers) and Matthew 2535 Properties, LLC (Buyer) entered into an agreement of sale for the Property on which there was a bar-restaurant with an agreed-upon sale price of $400,000. The Sellers' three sons, through Denithorne Brothers, Inc., operated the bar-restaurant and it insured the

_____

[*] Retired Senior Judge assigned to the Superior Court.

Property, even though it did not own the Property.  Sellers did not have their own insurance on the Property.  Prior to closing, on March 17, 2018, a large fire engulfed the Property and destroyed the bar-restaurant.

After Sellers refused to remediate the damages to and close on the sale of the Property, Buyer brought an action for specific performance seeking to enforce the agreement of sale (Agreement).  The key provision in that Agreement at issue is Paragraph 16 that provides, in pertinent part:

> **Risk of Loss/Condemnation**.  **Seller shall bear *all* risk of loss until Closing, and shall deliver the Property in its current condition** as of this date.  Seller shall coordinate any remediation of casualty with Buyer **or** arrange for the provision of the funds for remediation at Closing and may leave the Property in its damaged condition if the **proposed insurance settlement** is acceptable to Buyer.  The parties shall cooperate and coordinate any remediation or assignment of proceeds to achieve the desired result of the Buyer **without added cost to Seller**. . . .

In granting specific performance, the trial court found this paragraph to be ambiguous because of the different understandings of what "without additional cost to the Seller" meant.  The Sellers contended that that clause protected them from any loss other than the amount of the insurance proceeds, if they existed, while the Buyer stated that that provision meant that the Buyer was required to assume all risks of cost until closing.  In resolving the ambiguity, the trial court found that because the Sellers were obligated to close on the Property and deliver the Property in its current condition but was also obligated to compensate the Buyer the value of the

bar-restaurant as measured by insurance proceeds received by Denithorne Brothers, Inc. rather than remediate the Property.

In reversing the trial court, the majority states that the trial court did not give proper effect to the phrase "without added cost to Seller" in holding that the Sellers were bound by the Agreement to either remediate the property to its prior condition or "provide[ ] the funds necessary to remediate the Property." As a result of that lack of emphasis, the majority rewrites Paragraph 16 which states the Sellers are responsible for "all risk of loss until Closing" to the Seller is "not" responsible for risk of loss unless they have insurance. Because the majority ignores a whole lot of words in arriving at this conclusion and substitutes factual interpretation for that of the trial court, I respectfully dissent for several reasons.

**I.**

As the majority points out, on appeal, Sellers do not challenge the trial court's finding that Paragraph 16 is ambiguous. What the majority does not squarely address, though, is our narrow scope of review when reviewing a trial court's findings regarding an ambiguous contract. Unlike unambiguous provisions which are interpreted as a matter of law, ambiguous provisions are interpreted by the finder of fact. *See Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 469 (Pa. 2006). Because the trial court is the finder of fact, we must begive those findings the same weight and effect on appeal as the verdict of a jury and interpret those provisions most favorable

J-A16036-22

to the verdict winner, and we can only reverse the trial court's interpretation of an ambiguous contract that is not supported by competent evidence in the record or if its findings are premised on an error of law. ***Jones v. McGreevy***, 270 A.3d 1, 12 (Pa. Super. 2022).

The majority does not discuss why the trial court's interpretation is unreasonable or wrong by emphasizing the topic sentence of Paragraph 16 that "Seller shall bear *all* risk of loss until Closing, and shall deliver the Property in its current condition . . ." Presumably, it believes its interpretation is "better," a conclusion that is not ours to make under our scope of review.

Moreover, not only does it usurp the trial court's fact finding function, the majority's interpretation is not better because it does not take into consideration all the language of Paragraph 16 in that:

- It reads out the first sentence which provides that "Seller shall bear all risk of loss until Closing and shall deliver the Property in its current condition as of this date." All risk of loss is just that – all risk of loss.

- It also ignores the next sentence which states that "Seller shall coordinate any remediation of casualty with Buyer **or** arrange for the provision of the funds for remediation at Closing **and** may leave the Property in its damaged condition if the **proposed insurance settlement** is acceptable to Buyer." Under this sentence, it is clear that Sellers can cure any loss by remediation, funds for remediation or any insurance settlement, if acceptable to Buyer. By denominating those options, this provision clearly does not provide that only if Sellers have insurance are they obligated for loss; only if they do have insurance, Buyer, at its discretion, can accept that amount.

- The best reading of the phrase in the last sentence - "without added cost to the Seller," upon which the majority relies, modifies "the assignment of [insurance] proceeds" mentioned in

- 4 -

previous sentences. In other words, it means that if the Buyer accepts the insurance proceeds, that was all that it was to receive.

Because the trial court's interpretation is not unreasonable and is consistent with all words of the Agreement, I disagree with the majority essentially making its own findings and arriving at its interpretation of the contract, something that is not permissible under our narrow scope of review.

## II.

Even if Sellers were entitled to specific performance, the majority then goes on to say that the trial court erred in directing the purchase price to be $400,000 less the amount of insurance proceeds paid to Denithorne Brothers, Inc. because Buyer did not present evidence of the fair market value of the Property, and the only evidence submitted was the $375,000 post-fire offer they had received from a third party. I respectfully disagree because the majority relies on a mistaken view of the law and a misimpression of what the trial court ordered.

Specific performance of an agreement for the sale of real estate is not an action for damages but to have the effect of the

> **From the moment an agreement of sale of real estate is executed and delivered it vests in the grantee [(purchaser)] what is known as an equitable title to the real estate**. Thereupon **the vendor [(seller)] is considered as a trustee of the real estate for the purchaser** and the latter becomes a trustee of the balance of the purchase money for the seller. Hence, if the terms of the agreement are violated by the [seller], [the purchaser] may go into a court of equity seeking to enforce the contract and to compel specific performance.

* * *

> Courts in this Commonwealth consistently have determined that specific performance is an appropriate remedy to compel the conveyance of real estate where a seller violates a realty contract and specific enforcement of the contract would not be contrary to justice.

*Oliver v. Ball*, 136 A.3d 162, 167 (Pa. Super. 2016), *appeal denied*, 145 A.3d 167 (Pa. 2016) (citations and quotation marks omitted; emphases added).

In this case, the terms of the Agreement provided Sellers with the right to seek specific performance in the event of a breach, given the necessarily unique nature of the sale of real property. In addition, Paragraph 16 provided how any damages involving the structure incurred before closing would be compensated or remediated for which the Sellers were to bear the risk of "all loss."

In crafting its order for specific performance of the Agreement, the trial court recognized that remediation had to take the form of money damages representing the value of the Property that were paid due to the destruction of the Property. It reasoned that:

> [We] are mindful that the subject property no longer contains the restaurant structure as a result of the fire. The plaintiff has sought other possible forms of relief, but they are not feasible. We cannot order the parties to coordinate the remediation of the property because remediation in this case would require the Defendants to construct an entirely new restaurant on the property. There has been no testimony or evidence presented to this Court concerning the value of the restaurant structure prior to the fire. There has been no testimony or evidence presented to this Court as to the timeframe or cost of constructing a new restaurant on the property. . . . We also cannot order the Defendants to provide the insurance proceeds to

the Plaintiff because the insurance proceeds were not paid to the Defendants, but to Denithorne Brothers, Inc.

Based on the foregoing, we find the most equitable remedy to be one where the Plaintiff may purchase the subject property for the sum of four hundred thousand dollars ($400,000), as set forth in the Agreement, minus the amount of the insurance proceeds paid to Denithorne Brothers, Inc. for the total loss of the restaurant structure, excluding therefrom any sum paid by the insurance company for the loss of personal property contained within the restaurant. We find that because there was no testimony or evidence presented as to the value of the damaged and destroyed restaurant, the insurance proceeds provide the best estimate as to the true value of that structure. . . . The Plaintiff is, in effect receiving the value of the insurance settlement as negotiated by the parties in the event of a loss and a failure to remediate on the part of the Defendants.

(Trial Ct. Op., at 13-15).

As can be seen, the trial court did not order the amount of insurance proceeds paid to Denithorne Brothers, Inc. to be paid to the Sellers. What this order did was use that amount as a measure of damages for remediation that Sellers were required to pay. It was also an amount envisioned by Paragraph 16 as an alternative measure of damages rather than remediation, i.e., that Sellers rebuild the bar-restaurant, something that the trial court could have ordered.

As to the Sellers' claim that the trial court should have accepted their evidence of a market value of $375,000 in the form of the third-party offer for the Property after the fire, presumably, the Sellers would contend that if accepted, they would argue that the Buyer only suffered a $25,000 loss. What that ignores is that this is an action for specific performance seeking to have

the Agreement enforced, not an action for money damages. Even if there was a bona fide offer of one million dollars for the Property after the fire, that would not have defeated the request for specific performance to close on the Property with the Property in the same condition as it was when the Agreement was entered.

Moreover, the trial court properly rejected that evidence because the party who purportedly made the offer was not called as a witness to verify the contents of the offer or its authenticity and the trial court refused to accept it. Viewing the evidence in the light most favorable to the Buyer as the verdict winner and giving appropriate weight to the findings and credibility determinations of the trial court as factfinder, we decline to disturb the trial court's assessment in this regard. **See Jones**, *supra* at 12.

Accordingly, because I agree with the trial court that equity required specific performance of the sale of the Property at the contract price, adjusted downward measured by the amount of the insurance proceeds paid as a proxy for the amount needed to cover the loss, I respectfully dissent.