**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2886
_____

G.S., a minor, by his parents, J.S. and E.S.

v.

ROSE TREE MEDIA SCHOOL DISTRICT
(E.D. Pa. No. 2-16-cv-04782)

ROSE TREE MEDIA SCHOOL DISTRICT

v.

E.S. and J.S., Parents and Natural Guardians of G.S., a Minor
(E.D. Pa. No. 2-16-cv-04849)

Rose Tree Media School District,
                                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 2-16-cv-04782 & 2-16-cv-04849)
District Judge: Honorable Eduardo C. Robreno
_____

Argued June 4, 2018

_____

Before:  AMBRO, JORDAN,
and VANASKIE,* *Circuit Judges*

(Opinion Filed: November 6, 2018)

Gabrielle C. Goham, Esq.
Katherine H. Meehan, Esq. [**Argued**]
Raffaele Puppio
19 West Third Street
Media, PA 19063
    *Counsel for Appellant*

Michael D. Raffaele, Esq. [**Argued**]
Kershenbaum and Raffaele
1230 County Line Road
Bryn Mawr, PA 19010
    *Counsel for Appellees*

---

* On November 6, 2018, the panel issued a not precedential opinion in this matter authored by the Honorable Thomas I. Vanaskie.  Judge Vanaskie retired from the Court on January 1, 2019.  After Judge Vanaskie's retirement, amici curiae filed a motion to issue the opinion as a precedential opinion which was considered by the remaining members of the merits panel.  Today, the Court has issued the opinion as a precedential per curiam opinion.  See 3rd Cir. I.O.P. 12.1 (d).

Shannon L.C. Ammon, Esq.
Jeffrey A. Sturgeon, Esq.
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA  19103

Maura McInerney
Education Law Center
1315 Walnut Street, Suite 400
Philadelphia, PA  19107
      *Counsel for Amicus Appellees*

_____

OPINION  OF  THE  COURT
_____

PER CURIAM

Appellant Rose Tree Media School District ("Rose Tree") appeals the District Court's grant of summary judgment concluding that Rose Tree was obligated to enroll Appellee G.S. under Subtitle VII-B of the McKinney-Vento Homeless Assistance Act ("McKinney-Vento" or the "Act"), 42 U.S.C. § 11434a(2) and § 11432(g)(3)(A)(i).  We agree with the District Court that G.S. satisfies the Act's definition of youth homelessness because he has been living in his maternal grandmother's home, along with his parents, ever since his parents lost their home in November 2014.  Accordingly, we will affirm.

I.

In 2010, G.S., along with his parents, his two sisters, and his paternal grandparents, moved into a rental home within Rose Tree. At the time, G.S. and his sister, S.S., attended schools within Rose Tree. In November 2014, G.S.'s parents were unable to make payments and lost the home. As a result, G.S. moved in with Ba.S., his maternal grandmother. The grandmother's single-family, 1500-square-foot row house was located outside of Rose Tree.

With the addition of G.S., a total of ten people—five adults and five children—resided in the grandmother's home. Initially, G.S. slept in the living room with his parents and two sisters. At times, G.S. moved his cot to the kitchen or basement to obtain some privacy. The parties agree that, to date, G.S.'s living conditions remain unchanged.

Rose Tree immediately learned of the change in G.S.'s living conditions. At that time, Rose Tree deemed G.S. and S.S. homeless and thus continued to enroll them in a manner consistent with its obligations under McKinney-Vento, 42 U.S.C. § 11432(g)(3)(A)(i).

In January 2015—less than two months after G.S. moved in with his maternal grandmother—he was involved in a disciplinary incident at school. Rose Tree suspended G.S. for three days, extended the suspension to ten days, and threatened him with expulsion. G.S.'s parents challenged Rose Tree's actions. The parties resolved the matter pursuant to a written Settlement Agreement. Rose Tree, for its part, agreed to pay for G.S. to attend a school outside of its jurisdiction for the 2015–16 school year. In exchange, G.S.'s parents agreed to waive all claims through August 31, 2016. The Settlement Agreement also included a provision purporting to waive G.S.'s right to claim homelessness after the 2015–16 academic year.

4

Pursuant to the Agreement, G.S. attended a school outside Rose Tree for the 2015–16 school year. Following the conclusion of that academic year, in July 2016, G.S.'s parents notified Rose Tree of the family's intent to re-enroll G.S. in one of its schools for the 2016–17 academic year. Rose Tree refused to enroll G.S., reasoning that his parents had waived his right to claim homelessness and thereby enroll under McKinney-Vento.

G.S.'s parents initiated state grievance proceedings. After conducting an inquiry, the Pennsylvania Department of Education issued a determination letter, stating:

> the outcome of our investigation is that [G.S.] . . . ha[s] the right under the federal McKinney-Vento Homelessness Act to continue being educated in the Rose Tree Media School District since it is [his] school district of origin and [he] is temporarily residing in a doubled up living situation that is not fixed, regular nor adequate.

(App. 365.) G.S.'s parents again attempted to enroll G.S. in Rose Tree, but the School District again refused.

Throughout the pendency of this matter, Rose Tree continued to enroll G.S.'s sister, S.S, in one of its schools. The parties do not dispute that S.S.'s living conditions are identical to those of G.S.

G.S. and his parents filed suit in federal court, Case No. 16-4782, against Rose Tree, seeking enrollment. Rose Tree filed a separate lawsuit in federal court, Case No. 16-4849, against G.S.'s parents, seeking a declaration that it was not

5

obligated to enroll G.S. The District Court consolidated the two cases in February 2017. Both parties moved for summary judgment. The District Court resolved both motions in a single order, finding in favor of G.S. Rose Tree timely appealed. On appeal, the Education Law Center, the Homeless Children's Education Fund, the National Law Center of Homelessness and Poverty, and the People's Emergency Center appear as *amici* in support of G.S.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

## III.

Rose Tree argues that the grant of summary judgment in favor of Appellees was erroneous because: (1) G.S.'s parents waived his McKinney-Vento rights for the 2016–17 academic year in the Settlement Agreement; (2) G.S. is no longer "homeless" within the meaning of the Act; and (3) enrollment in Rose Tree is not in G.S.'s "best interest."

## A.

As a threshold matter, we must determine whether G.S.'s parents waived his McKinney-Vento rights in the Settlement Agreement. The parties agree that Pennsylvania law governs our interpretation of the Agreement. Under Pennsylvania law, "[t]he fundamental rule in contract interpretation is to ascertain the intent of the contracting parties." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006) (internal citation omitted). "In cases of a written contract, the intent of the parties is the writing itself . . . When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself." *Id.* (internal citations omitted).

In relevant part, the Settlement Agreement includes a provision purporting to waive G.S.'s McKinney-Vento rights for the 2016–17 academic year. This provision states:

> Parents agree that they will make no claim of homeless status after the 2015-16 school year and that the District will have no further obligations to Student after the 2015-16 school year.

(App. 140.) The District Court concluded that the waiver was unenforceable for lack of consideration. We agree.

Under Pennsylvania law, consideration is an essential element of a valid contract. *See Taylor v. Stanley Co. of Am.*, 158 A. 157, 158 (Pa. 1932); *see also Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 516 (Pa. Super. Ct. 1995). In addition to the waiver provision excerpted above, the Settlement Agreement includes a provision titled "Adequate Consideration." This provision states:

7

> **Adequate Consideration.** The Parents specifically acknowledge and agree that the District's agreement to make the above payments is intended to and does provide the Parents with sufficient consideration for a settlement and compromise of any and all outstanding education and discrimination claims that they may now have or have had, whether known or unknown, from the beginning of time through August 31, 2016. The Parents also expressly acknowledge and confirm that: (1) the only consideration for their signing of this Agreement consists of the terms and provisions stated herein; and (2) no other promise or agreement of any kind, save those set forth in this Agreement, has been made by any person or entity whatsoever to cause them to sign the document.

(App. 141) (emphasis in original).

Rose Tree argues, in conclusory fashion, that the family received "adequate" and "substantial consideration for all of the promises made . . . ." (Appellant's Br. 6.) G.S. and his parents counter that the "Adequate Consideration" provision of the Agreement expressly limits consideration to claims arising before August 31, 2016, and thus any waiver of claims concerning the 2016–17 academic year lacks consideration. (Appellees' Br. 11–12, 15–16.) As the District Court concluded, the clear and unambiguous language of this provision states that consideration was only provided for claims through August 31, 2016, which pre-dates claims arising out of the 2016–17 academic year. Accordingly, we agree that any purported waiver of claims arising after August 31, 2016 lacks consideration and is unenforceable.

## B.

Next, Rose Tree contends it need not enroll G.S. because he is no longer "homeless" within the meaning of the Act. Subtitle VII-B of the Act, "Education for Homeless Children and Youths" ("EHCY"), addresses the educational barriers faced by homeless children. EHCY preserves the right of equal access to a "free, appropriate public education" independent of a child's housing status. 42 U.S.C. § 11431(1). Specifically, under this subtitle, local education agencies are required to continue a homeless child's education in his or her "school of origin" for the "duration" of his or her homelessness if doing so is in the child's "best interest." *Id.* § 11432(g)(3)(A)(i). Notably, there is no statutory limit on the duration of homelessness.

Whether a child is eligible under EHCY is determined by the Act's definition of youth homelessness, 42 U.S.C. § 11434a(2). In relevant part, this definition provides:

> The term "homeless children and youths"—
>
> > (A) means individuals who lack a fixed, regular, and adequate nighttime residence (within the meaning of section 11302(a)(1) of this title); and
> >
> > (B) includes—
> >
> > > (i) children and youths who are sharing the housing of other persons due to loss of housing, economic hardship, or a similar reason; . . .

9

*Id.* § 11434a(2). Children who satisfy § 11434a(2)(B)(i) are often described as living "doubled up." *See* U.S. Dep't of Educ., Education for Homeless Children and Youths Program Non-Regulatory Guidance, 5 (2016), https://www2.ed.gov/policy/elsec/leg/essa/160240ehcyguidance072716.pdf.

There is no dispute that G.S. satisfied § 11434a(2) when he first moved in with his maternal grandmother. Rather, the question is whether G.S. continues to satisfy this definition almost four years later. Rose Tree argues that G.S. no longer lacks a fixed, regular, and adequate nighttime residence due to the fact that his doubled-up living arrangement has persisted for several years. We are not convinced.

First, Rose Tree's interpretation is inconsistent with the plain meaning of the statute. There is no dispute that G.S. continues to satisfy § 11434a(2)(B)(i), which is listed as a specific example of youth homelessness. Second, the Act does not impose a limit on the duration of homelessness. This undermines Rose Tree's argument that a doubled-up arrangement can transform into a fixed, adequate, and regular nighttime residence if it persists long enough. Third, Rose Tree fails to cite any authority other than general provisions of the Act and the dictionary for its interpretation. This is unsurprising—to date, no court has adopted Rose Tree's interpretation. Fourth, several circumstances particular to this case persuade us that G.S. is eligible for coverage. Rose Tree initially treated G.S. as homeless, and the parties agree his living arrangements have not changed. It is also compelling that Rose Tree has continued to enroll G.S.'s similarly situated sister, S.S., throughout the duration of this matter.[1] And

_____

[1] Although S.S. is enrolled, the record is unclear as to whether Rose Tree still considers her to be homeless within the meaning of the McKinney-Vento Act. (App. 292–93.) At oral

10

finally, the Pennsylvania Department of Education determined that G.S. remains homeless.  Although we are not bound by the Agency's determination, we think it is well-reasoned and, therefore, instructive.  To remove G.S. from the protections of the Act under these circumstances strikes us as nothing short of arbitrary.  Accordingly, we agree that G.S. continues to qualify as homeless for purposes of enrollment in a Rose Tree school.

## C.

Finally, assuming G.S. qualifies as homeless, Rose Tree argues it need not enroll G.S. because enrollment is not in his best interest.  It raises this argument for the first time on appeal and thus we need not consider it.  *See Caisson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672, 680 (3d Cir. 1980).  Nonetheless, we take a moment to reject this argument on its merits.

A school district is required to enroll a homeless student so long as doing so accords with the child's "best interest."  42 U.S.C. § 11432(g)(3)(A).  It is presumed that the best interest of the student is to remain in his or her school of origin unless doing so is contrary to the request of the parent or youth.  *Id.* § 11432(g)(3)(B).  School of origin "means [either] the school that a child or youth attended when permanently housed or the school in which the child or youth was last enrolled, including a preschool."  *Id.* § 11432(g)(3)(I)(i).

Here, all of the statutory considerations align to suggest enrollment in Rose Tree is in G.S.'s best interest.  Rose Tree hosts the school where G.S. was enrolled when he became

---

argument, the School District took the position that while S.S. was homeless at the start of the 2016–17 academic year, she may not be homeless currently.

homeless; the school where G.S. was last enrolled; the school where his sister attends; and the school where he and his parents seek enrollment. Under these circumstances, we conclude that continued enrollment in Rose Tree is in G.S.'s best interest.

## IV.

For these reasons, we will affirm the order of the District Court dated July 31, 2017.