J-A20019-25; J-A20020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SITUS PROPERTIES, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JENKINS COURT REALTY CO., LP | : | |
| | : | |
| Appellant | : | No. 3210 EDA 2024 |

Appeal from the Judgment Entered November 19, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2020-12065

| | | |
|---|---|---|
| SITUS PROPERTIES, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JENKINS COURT REALTY CO., LP | : | |
| | : | |
| Appellant | : | No. 394 EDA 2025 |

Appeal from the Judgment Entered February 2, 2025
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2020-12065

BEFORE:  MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY McLAUGHLIN, J.:          **FILED FEBRUARY 10, 2026**

Jenkins Court Realty Co., LP ("Jenkins Court") appeals from the

judgment entered in favor of Situs Properties, Inc. ("Situs Properties") and

_____

* Retired Senior Judge assigned to the Superior Court.

against it. It further appeals from the order granting Situs Properties' motion for attorneys' fees. We affirm.

Jenkins Court owns a multi-story, multi-tenant property in Jenkintown, Pennsylvania. In January 2019, it entered into an exclusive agency agreement with Situs Properties such that Situs Properties was its agent for leasing or selling the property ("Agency Agreement").[1]

Section 3 of the Agency Agreement provides:

> . . . A commission is earned, due and payable to AGENT when the OWNER has entered into a written lease agreement with a tenant, or an agreement of sale with a buyer, or conveys the premises to a buyer, during the term of this [Agency] Agreement, that remains valid and in full force and effect at the time the commission is due and payable (hereinafter referred to as "procures a tenant or buyer"). Furthermore, during the term of this [Agency] Agreement, or after termination of this Agreement under the circumstances provided for in SECTION 4, AGENT [sic], OWNER, any other agent, broker, or other person or entity, procures a tenant or buyer for the Premises, or any part thereof, or any interest therein, OWNER shall pay AGENT a Sale Commission or Leasing Commission as set forth below:
>
> > Leasing Commission: SIX PERCENT (6%) of the Rent (defined below) to be paid during the first year of the lease term following a rent abatement period if any, plus FIVE PERCENT (5%) of the Rent to be paid during the second years of the lease term, plus FOUR PERCENT (4% of the Rent to be paid during the third and subsequent years of the lease terms . . . . AGENT shall also be paid a commission (i) on options, renewals, and all subsequent periods of occupancy in the amount of the aggregate Rent according to the first sentence of this

---

[1] Jenkins Court terminated the Agency Agreement, effective November 2019. Trial Ct. Op. at 27.

subparagraph to be paid at the commencement of the lease term . . . .

Trial Exh. 1, at 1.

When the parties entered into the Agency Agreement, Outback Steakhouse of Florida ("Outback") was an existing tenant of Jenkins Court. Stipulation of Undisputed Facts, filed Sept. 3, 2024, at ¶ 4. Jenkins Court added Exhibit A to the Agency Agreement. Exhibit A read, in relevant part:

EXHIBIT A

1 of 3

SITUS WILL ADDRESS TENANTS RENEWALS

. . .

4. Outback Steakhouse

. . . .

Trial Exh. 1, Exh. A, at 1.[2]

Jenkins Court's principal,[3] Philip Pulley, asked Situs Properties in March 2019 to look into whether Outback would exercise its five-year renewal option. Situs Properties' president, Michael Cohen, then exchanged emails and phone

---

[2] Pages two and three of Exhibit A included lists of tenants for which other brokers were responsible. Trial Exh. 1, at Exh. A, at 2-3. Michael Cohen of Situs Properties testified Jenkins Court added Exhibit A to the Agency Agreement. N.T., Sept. 16, 2024, at 83. Philip Pulley of Jenkins Court testified Situs prepared Exhibit A. *Id.* at 95. The trial court found Pulley's testimony not credible. Trial Ct. Op. at 29.

[3] Pulley is the president of Old Jenkins Corporation and Old Jenkins Corporation is the general partner of Jenkins Court. N.T., Sept. 16, 2024, at 92. Devra Pulley is Pulley's wife.

calls with Outback, as well as with Philip Pulley and his wife, Devra Pulley, about Outback's lease. The communications covered several topics:

- Outback's request to split the option into a three-year term and a two-year term, rather than the five-year renewal term;

- Situs Properties' suggestion to Jenkins Court to delay responding and Jenkins Court's agreement;

- Locations to which Outback might consider relocating and potential replacement tenants;

- Jenkins Court's request that Situs Properties accept the three-year/two-year renewal;

- References in an email between Outback and Situs Properties to a phone call about the new renewal terms; and

- Outback's letter exercising the original five-year option.

*See* Trial Ct. Op., filed Nov. 14, 2025, at 17-25. Situs Properties also introduced into evidence its monthly marketing reports for the relevant period. The reports were sent to Jenkins Court and detailed its communications.

In April 2020, Situs Properties sent Jenkins Court an invoice for payment of the commission for the renewal of Outback's lease. Jenkins Court responded that Outback had not paid rent due to the COVID-19 shutdown and Jenkins Court would not pay commissions until Outback paid the rent:

> As you know Governor Wolff's [sic] shut down of the State due to the Covid-19 Pandemic has left many business [sic] struggling. As a result[,] Outback Steakhouse has not paid rent for March, April or May. In addition[,] they are requesting to be released from paying rent for the duration

> of the year. Therefore, no commissions will be paid until this issue is resolved with Outback.

Trial Exh. 25.

Situs Properties filed a notice of lien in July 2020. Jenkins Court petitioned to strike the lien, asserting that Jenkins Court did not owe Situs Properties a commission based on the renewal. It maintained that Situs Properties had not procured the tenant as required to earn a commission under the Agency Agreement. The trial court denied the petition. Jenkins Court appealed, and this Court quashed the appeal as interlocutory.

Situs Properties in September 2021 sued to enforce the lien. Following a September 2024 bench trial, the trial court found in favor of Jenkins Court and against Situs Properties. Situs Properties moved for post-trial relief. Following a hearing, the court granted the motion and vacated the verdict in favor of Jenkins Court. It then found in favor of Situs Properties and awarded damages plus interest. The order allowed Situs Properties 10 days to file a motion for attorneys' fees.

Jenkins Court filed a praecipe to reduce the order to a judgment, and the prothonotary entered judgment. In November 2024, Jenkins Court filed the first appeal captioned above, docketed at 3210 EDA 2024 ("November Appeal").

Situs Properties then filed in the trial court a motion for attorneys' fees. It also requested prejudgment interest. Jenkins Court did not respond to the motion. In January 2025, the court granted Situs Properties' motion and molded the verdict to include prejudgment interest and attorneys' fees. The

trial court's prothonotary entered judgment, and in February 2025, Jenkins Court filed the second appeal, docketed at 394 EDA 2025 ("February Appeal"). Thereafter, the post-trial motion hearing transcript was docketed.

In October 2025, we concluded the appeals were timely and that Jenkins Court did not waive its issues for its initial failure to request transcripts of the post-trial motion hearing. We remanded to the trial court for issuance of an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a). The trial court has filed its opinion.

Jenkins Court raises identical issues in both appeals:

> A. Whether the Trial Court erred, for the following reasons, as a matter of law and fact, in granting the Motion for Post-Trial Relief under Pa. R.C.P. 227.1(a) filed by . . . Situs Properties, . . . and thus deciding that . . . Jenkins Court . . . ( 1) breached the parties' Exclusive Agency Agreement and therefore (2) owed Situs [Properties] a commission payment:
>
>> a. Where the evidence established that Situs [Properties] undertook no action (i) to procure Outback as a tenant or (ii) to procure Outback's exercise of the pre-existing option to renew contained in Outback's 1992 Lease Agreement, which included testimony from Outback representatives that Situs[ Properties'] actions played no role in Outback's decision to exercise the option to renew;
>>
>> b. Where the Trial Court erroneously interpreted Section 3 of the Exclusive Agency Agreement in a manner that would entitle Situs [Properties] to a commission when Outback exercised its pre-existing option to renew, even though (i) the plain language of Section 3 imposes a requirement that Situs [Properties] take affirmative measures to "procure" a tenant such that Jenkins Court "enter[s] into a written lease agreement with [the] tenant[,]" and (ii) Situs [Properties] took no action to

procure Outback as a tenant or to procure Outback's exercise of the option to renew;

c.     Where the Trial Court erroneously decided Exhibit "A" to the Exclusive Agency Agreement created an ambiguity or was inconsistent with the construction of Section 3 of the Exclusive Agency Agreement proffered by Jenkins Court; and

d.     Where Situs [Properties] breached its obligations under the Exclusive Agency Agreement when it admittedly disregarded the direct instructions from Jenkins Court on April 26, 2019 to accept Outback's proposal and to thereby consummate the transactions for the Lease renewal.

. . .

C. Whether the Trial Court erred in deciding that Situs [Properties] was entitled to interest and attorney fees in addition to any commission.

Jenkins Court's Br., 3210 EDA 2024, at 6-7 (suggested answers omitted);

Jenkins Court's Br., 394 EDA 2025, at 6-7 (suggested answers omitted).[4]

We will address all sub-issues in Issue A together. Jenkins Court maintains the trial court erred in granting Situs Properties' motion for post-trial relief. It reasons that under Section 3 of the Agency Agreement, it did

_____

[4] Jenkins Court also raised the following issue, which we addressed in our memorandum prior to remand:

B. Whether this Honorable Court should Quash this appeal pursuant to Rule 1911 of the Pennsylvania Rules of Appellate Procedure, where the transcript of the oral argument concerning Situs[ Properties'] Post-Trial Motion for Relief presented no evidence for consideration and only related to the legal arguments fully briefed by the parties.

Jenkins Court's Br., 3210 EDA 2024, at 7 (suggested answer omitted); Jenkins Court's Br., 394 EDA 2025, at 7 (suggested answer omitted).

not owe Situs Properties a commission payment for Outback's exercise of the option to renew. Jenkins Court claims that Situs Properties did not "procure" the Outback lease, which it alleges was required for Situs Properties to earn a commission under Section 3. Jenkins Court maintains that under Section 3, a tenant is procured only where Situs Properties took affirmative measures to "procure" the tenant, "such that Jenkins Court 'enter[s] into a written lease agreement with [the] tenant[.]'" Jenkins Court's Br. at 21 (alterations in original). Jenkins Court argues that the agreement "did not entitle Situs [Properties] to a commission payment merely because Situs [Properties] happened to be the 'AGENT' of Jenkins Court when Outback[] unilaterally decided to exercise its option to renew a Lease Agreement Situs [Properties] had not originally 'procure[d].'" *Id.* It claims here the minimal emails were not sufficient to establish Situs Properties procured the renewal, and claims Situs Properties did not negotiate with Outback. Jenkins Court further maintains Situs Properties ignored Jenkins Court's directive to accept a three-year renewal from Outback. It notes that Outback's employees testified that Situs Properties played no role in its decision to renew.

Jenkins Court also claims the Agency Agreement did not create an ambiguity and was not inconsistent with Section 3. It argues that it is not arguing that Situs Properties could never have earned a commission with respect to existing tenants. It argues Exhibit A, which required Situs to "address" Outback's lease, was not inconsistent with the Agency Agreement's plain language and did not create an ambiguity. It maintains that Situs

Properties could earn a commission on options and renewals, but that the factual record demonstrated it did not perform necessary functions to earn it. It maintains "procure" and "address" are not interchangeable, and that there is no latent ambiguity because Situs Properties could both procure and address the same tenant. It also points out that Situs Properties drafted the agreement.

When interpreting contract terms, "the cardinal rule followed by courts is to ascertain the intent of the contracting parties." *Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 909 (Pa. 2019) (quoting *Commonwealth ex re. Kane v. UPMC*, 129 A.3d 441, 463 (Pa. 2015)). "If the contractual terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the intent of the parties." *Id.* (citation omitted). However, if the contractual terms are ambiguous, courts may "then resort to extrinsic evidence to ascertain their meaning." *Id.* (citation omitted). "A contract's terms are considered ambiguous '[i]f they are subject to more than one reasonable interpretation when applied to a particular set of facts.'" *Id.* (citation omitted). "[U]nambiguous contracts are interpreted by the court as a matter of law, [but] ambiguous writings are interpreted by the finder of fact." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 469 (Pa. 2006).

Here, the trial court concluded the contract was ambiguous. Trial Ct. Op. at 14. It based its conclusion on "*inter alia*, . . . : the parties' disparate contract interpretations . . . ; the finding that the word 'procure' was not adequately

defined in the Agreement; and, the confusion caused by Exhibit A in relation to the contract term 'procure.'" *Id.*

The trial court then considered parol evidence to determine the parties' intent. The court first considered the Merriam-Webster Dictionary definition of the word "procure," noting it defined the word "as obtaining something by specific effort, or causing something to happen or be done." *Id.* It therefore concluded that Situs Properties "would be entitled to a commission if [it] engaged in some specific effort to cause Outback to exercise its renewal option." *Id.* at 15. It then noted that the Webster dictionary stated that "a person procures something when, through his effort, he makes something happen." *Id.* The court therefore found "that a broker who used his efforts to cause a party to exercise its[] option to renew, had procured the option" and that the word "procure" in the Agency Agreement "did not require an additional written lease." *Id.*

The trial court next reviewed the parties' conduct to determine their intent and found the parties intended that Situs Properties would earn a commission where it exerted effort to encourage a tenant to exercise its option to renew and the tenant renewed its lease:

> At bar, the parties' conduct supported the interpretation that a broker such as [Situs Properties] would be entitled to a commission where the broker exerted effort to encourage the tenant to exercise its option to renew, and that tenant exercised its[] option. The court found that [Jenkins Court] specifically added Exhibit A to the parties' contract. Exhibit A indicates that [Situs Properties] shall "address" the Outback renewal. This addition to the contract indicated that it was [Situs Properties'] job to work to obtain a renewal of

- 10 -

Outback's lease. [Jenkins Court] used the specific word "address." [Jenkins Court] did not write that [Situs Properties] must obtain an additional lease with Outback to receive a commission for a renewal.

Moreover, [Jenkins Court's] response to [Situs Properties'] commission invoice likewise supported the parties' understanding that [Situs Properties] should receive a commission. As cited in Situs Exhibit #25, . . . [Jenkins Court] conceded that [Situs Properties] was owed a commission on the Outback renewal. Consequently, the court utilized this parol[] evidence in determining the meaning of the contract.

Finally, as testified to by Outback management, evidenced by Outback's renewal letter, and even argued by defense counsel, per industry practice, when a tenant exercises an option to renew, the tenant merely provides notice of same via a letter. There is no new contract executed. The option allows the existing contract terms to continue. Therefore, [Jenkins Court's] argument that [Situs Properties] needed to get a new lease with Outback in order to procure a commission was factually incorrect. If [Jenkins Court's] assertion were true, a broker could never earn a commission because with the exercise of an existing option to renew there is no additional contract. There is only a letter.

*Id.* at 15-16 (citations to record and emphasis omitted).

The court then applied its contract interpretation to the evidence introduced at trial to determine whether Jenkins Court owed Situs Properties a commission. The trial court outlined the emails and phone calls exchanged between the parties and between Situs Properties and Outback. It further pointed out that Situs Properties' "communications and efforts were also documented in [Situs Properties'] monthly marketing reports that were sent to [Jenkins Court]," and that Jenkins Court did not object to the admission of the reports. *Id.* at 27 (emphasis omitted). The trial court concluded:

- 11 -

The . . . e-mails and associated monthly marketing reports documented, by a preponderance of the evidence, [Situs Properties'] efforts to secure the Outback renewal. Indeed, [Situs Properties] proposed a strategy to encourage Outback to renew, and the delay strategy appeared effective.

Throughout the trial, [Jenkins Court] claimed that [Situs Properties] did "nothing" to obtain Outback's renewal. The above evidence speaks otherwise. The fact that [Situs Properties'] efforts were made in the form of e-mail communications does not render such work less valuable, or less effective.

More specifically, [Jenkins Court] stated that [Situs Properties] was instructed to secure a split year lease, but [Situs Properties] never followed up on that deal in negotiations, and never closed that deal. [Jenkins Court] argued that if [Situs Properties] had obtained the split deal, [Situs Properties] might have been due a commission. But, because [Situs Properties'] communications resulted in Outback's exercise of the more favorable five (5) year lease, [Situs Properties] should get no commission. Again, [Jenkins Court] claimed that [Situs Properties] could have been due a commission if [Situs Properties] had procured the less favorable, split year deal, but would not be owed a commission where the same negotiations procured the more favorable deal. The court was not persuaded by this specious argument.

Further, the evidence showed that, despite [Jenkins Court's] assertions to the contrary, [Situs Properties] did follow up on the split deal. Outback simply did not accept the deal, and chose to exercise its[] option to renew at the eleventh hour. Thus, [Situs Properties'] delay strategy appeared to have worked.

[Jenkins Court's] split year argument was a red herring. The court concluded that the split deal was merely part of the ongoing e-mail negotiations between [Situs Properties] and Outback. The negotiations resulted in Outback's exercise of its five (5) year option to renew, which was [Jenkins Court's] preferred scenario.

In addition, the trial court did not find [Jenkins Court's] testimony regarding Exhibit A to the parties' Agency

- 12 -

Agreement credible. The court did not believe [Jenkins Court's] claim that [it] did not draft Exhibit A to the Exclusive Agency Agreement. The Exhibit referenced [Jenkins Court's] existing tenants, thus [Jenkins Court] was clearly the party with such information to include in the Exhibit. [Pulley] was also not credible when he stated that the only purpose of Exhibit A was to notify [Situs Properties] that the leases on the listed properties would be running out, and that [Situs Properties] would have additional space to rent in the future.

[Jenkins Court's] testimony regarding [its] May 5, 2020, response to [Situs Properties'] Outback commission invoice was also not credible. In the response letter, [Jenkins Court]/Pulley never challenged [Situs Properties'] right to the Outback commission. Instead, Philip Pulley stated that [Jenkins Court] explained that due to the effects of Covid 19, [Jenkins Court] could not pay the commission at that time.

[Pulley] stated that the above letter contained errors and was a mistake. [Pulley] claimed that, after he sent the letter, he realized that [Situs Properties] was not owed a commission. [Pulley] rationalized that he wrote the e-mail quickly, in the middle of Covid, without the aid of support staff. Such excuses were not persuasive, especially given the fact that [Pulley] took the time to copy his attorney on the letter. Further, on cross-examination, [Pulley] admitted that he never issued a clarification email to [Situs Properties] to inform [Situs Properties] that [it] was not entitled to the Outback commission.

Lastly, the fact finder gave very little weight to the Outback employees' testimony regarding the effect of [Situs Properties'] efforts in procuring the renewal. [Jenkins Court] insisted that the employees clearly stated that [Situs Properties] did not cause them to renew; they exercised their right to renew independently. Consequently, according to [Jenkins Court], such testimony means that [Situs Properties] did nothing regarding the renewal. The court disagreed.

The Outback employees stated that management has a list of considerations that it reviews when deciding whether to exercise its[] option to renew. Based on those

- 13 -

considerations, they make their decision. Essentially, the Outback management stated that it was Outback's ultimate decision whether to renew or not. Agreed --- that is the nature of an option to renew. With an option to renew, it is the tenant's choice whether it will exercise its option to renew, or not. However, that does not mean that the broker did not play a role in persuading the tenant to exercise same. The testimony of the Outback employees and [Situs Properties] were not mutually exclusive. The trial court concluded that both scenarios could exist at the same time.

*Id.* at 28-30 (citations to record omitted).

We conclude the trial court did not err. The Agency Agreement, coupled with Exhibit A, is ambiguous as to what is required for Situs Properties to "procure" a tenant when the tenant had and exercised a renewal option. The record supports the trial court's conclusion that the parties intended that Situs Properties would earn a commission on a renewal where Situs Properties exerted effort to encourage a tenant to renew a lease and the tenant exercised its renewal. *Id.* at 15. Further, the record supports the court's finding that here Situs Properties earned the commission through its communications with both Outback and Jenkins Court. Accordingly, Jenkins Court's challenges to the judgment lack merit.

We next address Jenkins Court's challenge to the award of attorney fees. It claims the court erred in granting the motion for attorneys' fees because it should not have entered judgment in favor of Situs Properties, noting that if this Court reversed the judgment, Situs Properties would not have had a

successful action. Jenkins Court further argues the fee award to Situs was "objectively unreasonable and excessive."[5] Jenkins Court's Br. at 36.

Here, we are affirming the trial court's entry of judgment, and therefore Situs Properties' action was successful. Further, Jenkins Court did not oppose the motion for attorneys' fees in the trial court. It therefore waived its arguments on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/10/2026

---

[5] The trial court did not order the filing of a Rule 1925(b) statement following the February Appeal. We point out that in the statement of questions presented, Jenkins Court claims the trial court "erred in deciding that Situs [Properties] was entitled to interest and attorney[s'] fees in addition to any commission," which is the issue it raised in the Rule 1925(b) statement for the November Appeal. Jenkins Court's Br. at 7; Statement of Matters Complained of on Appeal, filed Dec. 9, 2024, at ¶ 2. In the argument section of its brief, Jenkins Court challenges the grant of the motion for attorneys' fees and the amount of fees awarded. Jenkins Court's Br. at 35 (listing heading of section as "The Trial Court Erred in Awarding Attorneys' Fees to Situs, which were Unreasonable and Nearly Thrice as Large as the Amount of Commissions Sought").